UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DOUGLAS K. WINLAND,

      Petitioner,

v.                            Case No:  2:16-cv-2-FtM-99MRM

SECRETARY, DOC,

      Respondent.

_____/

## OPINION AND ORDER[1]

Before the Court is Petitioner Douglas K. Winland's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 1) filed on April 1, 2016, and the Secretary of the Department of Corrections' Response in Opposition (Doc. 17) filed on September 12, 2018. Petitioner did not file a reply brief and the time to do so has past. The Petition is fully briefed and ripe for the Court's review. For the following reasons, the Court denies the Petition.

## BACKGROUND

Winland, who is incarcerated within the Florida Department of Corrections, challenges his 2012 conviction and sentence. On November 6, 2010, Winland drove his van to the residence of Luis Colon. Colon and Winland's live in girlfriend for the past

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

eighteen years, Sherry Hetz, were having an affair. Winland had known about the affair for about a month. Winland drove the van to Colon's residence and waited outside by the street for Colon to exit. When Colon exited the house via the garage door, Winland drove his van into the driveway, jumped out of the van, and pointed a shotgun at Colon. Colon ran back into the house through a door in the garage. As Colon was running into the house, Winland fired a single shot from the 12-gauge shotgun. The pellets from the shotgun struck the door but missed Colon.

Winland was tried by a jury of his peers in the Twentieth Judicial Circuit Court in and for Lee County, Florida and found guilty of: attempted second-degree murder with a firearm (Count I), aggravated assault with a firearm (Count II), and shooting at, within, or into a dwelling or building (Count III). Adjudicated in accordance with the verdict, Winland was sentenced to a minimum mandatory term of twenty years in prison. The Second DCA affirmed *per curiam* on August 16, 2013. *Winland v. State*, 119 So. 3d 450 (Fla. 2d DCA 2013) [table]. Winland did not petition the United States Supreme Court for certiorari review.

Winland filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 dated May 12, 2014. On July 1, 2014, the Post-Conviction circuit court entered an order finding: (1) the Rule 3.850 motion was timely and contained the proper oath but failed to comply with Rule 3.850's "formatting requirements;" and (2) the majority of the grounds for relief (18 of 19) were "facially insufficient." Winland filed an amended Rule 3.850 motion on August 18, 2014. (Ex. 11). After response from the State (Ex. 13), the Post-Conviction Court denied Winland's amended Rule 3.850 motion without a hearing on November 14, 2014. (Ex.14). On appeal Florida's Second District Court of

Appeal (Second DCA or Appellate Court) affirmed *per curiam*. *Winland v. State*, 177 So. 2d 619 (Fla. 2d DCA 2015) (Ex. 14). Mandate issued on August 13, 2015. (Ex. 17); *Winland v. State*, 177 So.3d 619 (Fla. 2d DCA 2015) [table]. (2D14-5973).

On October 22, 2015, Winland filed a state petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. (Ex. 18). The petition was dismissed as untimely. (Ex. 19). *Winland v. State*, 2015 WL 9948099 (Fla. 2d DCA 2015). On October 13, 2015, Winland filed an untimely and successive rule 3.850 motion. (Ex. 20). The motion was denied as both untimely and successive (Ex. 21) and Winland appealed. The Second DCA affirmed *per curiam*. *Winland v. State*, 202 So. 3d. 421 (Fla. 2d DCA 2016).

Petitioner now files this Federal Petition for Writ of Habeas Corpus. Respondent, filed a limited response to the petition, incorporating a motion to dismiss the Florida Attorney General and dismiss the Petition as untimely filed. (Doc. 9). Winland filed a reply to the limited response. (Doc. 12). The Court found the Petition to be timely filed and dismissed the Florida Attorney General. (Doc. 13).

## STANDARDS OF REVIEW

### *The Antiterrorism and Effective Death Penalty Act*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs this action. *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). Under AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts. *Alston v. Fla. Dep't of Corr.*, 610 F.3d 1318, 1325 (11th Cir. 2010) (citations omitted). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that

state-court convictions are given effect to the extent possible under law." *Bell v. Cone,*
535 U.S. 685, 693 (2002).

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to
a claim adjudicated on the merits in state court unless the adjudication of the claim:

    (a)    resulted in a decision that was contrary to, or involved an
               unreasonable application of, clearly established Federal law,
               as determined by the Supreme Court of the United States; or

    (b)    resulted in a decision that was based on an unreasonable
               determination of the facts in light of the evidence presented in
               the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v.
Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim,
even without explanation, qualifies as an adjudication on the merits which warrants
deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Notably, a state
court's violation of state law is not sufficient to show that a petitioner is in custody in
violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a);
*Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather
than the *dicta*, set forth in the decisions of the United States Supreme Court at the time
the state court issued its decision. *White,* 134 S. Ct. at 1702*; Carey v. Musladin, 549* U.S.
70, 74 (2006) *(citing White v. Taylor,* 529 U.S. 362, 412 (2000)). The Supreme Court
has also explained that "the lack of a Supreme Court decision on nearly identical facts
does not by itself mean that there is no clearly established federal law, since 'a general
standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers,*
133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to

decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1*)*; *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order. *Id.*

<u>Standard for Ineffective Assistance of Counsel</u>

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Even an unreasonable error by counsel does not necessitate the setting aside of a judgment if the error did not affect the judgment. *Id.* at 692. Strategic decisions rendered by counsel after a complete review of relevant laws and facts are "virtually unchallengeable." *Id.* at 690-91. Petitioner cannot meet his burden by showing that counsel could have chosen a different course at trial. *White v. Singletary,* 972 F.2d 1218,

1220-21 (11th Cir.1992). Rather, Petitioner must show that counsel did not do what was constitutionally compelled to provide adequate counsel. *Accord Chandler v. United States,* 218 F.3d 1305, 1313 (11th Cir.2000) (*en banc*) (*quoting Burger v. Kemp,* 483 U.S. 776, 794, (1987)); *Hill v. Attorney Gen., Fla.*, No. 805-CV-911-T-30EAJ, 2008 WL 786652, at *3 (M.D. Fla. Mar. 20, 2008).

<u>*Exhaustion and Procedural Default*</u>

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (*citing Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501

U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted).  To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency.  *Bousley v. United States,* 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324.

## **DISCUSSION**

Petitioner raises sixteen grounds in his Petition.

Ground One: Winland claims that the evidence was insufficient to support his conviction for attempted second degree murder.

Ground Two: Winland claims that his trial counsel was ineffective for failing to call a ballistics expert to testify about trajectory.

Ground Three: Winland claims that his trial counsel was ineffective for failing to pursue a "heat of passion" defense.

Ground Four: Winland claims that his trial counsel was ineffective for misinforming him about his right to testify, resulting in a waiver.

Ground Five: Winland claims that his trial counsel was ineffective for failing to move for a judgment of acquittal on the second-degree murder charge based on a failure to prove murderous intent.

Ground Six: Winland claims that his trial counsel was ineffective for failing to object or move for mistrial when the prosecutor incorrectly stated, during closing argument, that testimony was presented that Sherry Hetz called the victim and said, "watch out, he's got guns."

Ground Seven: Winland claims that his trial counsel was ineffective for failing to call Sherry Hetz as a witness.

Ground Eight: Winland claims that his trial counsel was ineffective for failing to impeach the victim with prior inconsistent statements in "911 tapes, police interviews, and deposition testimony."

Ground Nine: Winland claims that his trial counsel was ineffective for failing to move to suppress Winland's statements to law enforcement.

Ground Ten: Winland claims that his trial counsel was ineffective for failing to object to tampered evidence.

Ground Eleven: Winland claims that his trial counsel was ineffective for failing to move for a judgment of acquittal on Count II based on an alleged failure to prove any threat by Winland to do violence to the victim.

Grounds Twelve and Thirteen: Grounds twelve and thirteen are taken together because, Winland raises claims of ineffective assistance of counsel based on the cumulative effect of counsel's alleged errors.

Grounds Fourteen and Fifteen: Winland raises claims of ineffective assistance of appellate counsel.

Ground Sixteen: Winland claims that "the accumulation of errors in this case" violated his due process rights and fair trial.

Respondent agrees that Grounds Two, Three, Four, Five, Six, Fourteen, and Fifteen are exhausted, but argues that Grounds One, Seven through Thirteen, and Ground Sixteen are unexhausted and procedurally barred. Respondent also states that while Grounds Fourteen and Fifteen are exhausted, they are procedurally barred.

<em>Ground One</em>

In Ground One, Winland avers that the evidence could not prove murderous intent or an overt act. Winland argues the Prosecutor failed to produce prima facia evidence he intended to shoot Colon. Winland claims his lack of intent to shoot anyone when he fired the shotgun precludes his conviction because it shows he lacked murderous intent. Winland moved the trial court for Judgment of Acquittal arguing he lacked murderous intent. The trial court denied his motion and the Second DCA affirmed. According to Winland, the Second DCA's reasoning in upholding the trial court's denial was erroneous. Winland argues the evidence shows he did not target Colon but waited for Colon to close the door leading to the garage before firing. Winland argues that he merely intended to scare Colon but did not intend to harm him. Respondent argues that this ground is unexhausted because Winland did not claim a violation of the federal constitution or federal law in the Post-Conviction Court or on appeal.

A federal habeas petitioner must exhaust his claims for relief by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *Paul v. Sec'y, Dep't of Corr.*, No. 8:15-CV-1397-T-33AEP, 2017 WL 2600824, at *2 (M.D. Fla. June 15,

(2017) (*citing O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).  *See also Pearson v. Sec'y, Dep't of Corr.*, 273 F. Appx. 847, 849–50 (11th Cir. 2008) ("The exhaustion doctrine requires the petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right.") (citing *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)).

In his argument before the Second DCA alleging trial court error, Winland only argued from state law and state cases.  (Ex. 6 at 9).  Winland never mentioned or made a claim based upon federal law, federal cases, or the United States Constitution. Winland's failure to present the federal nature of Ground One in the State Court leaves the exhaustion requirement unsatisfied.

And at this point, Winland cannot return to the Second DCA to file a successive appeal.  *See Claughton v. Claughton*, 393 So.2d 1061, 1062 (Fla. 1980) ("The general law and our procedural rules at both the trial and appellate levels are designed for one final judgment and one appeal."); Fla. R. App. P. 9.140(b)(3) (a defendant must appeal a final judgment within 30 days following rendition of a written order imposing sentence). Therefore, Winland's federal claims in Ground One are procedurally defaulted. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) (the doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer

available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.").

Winland can show neither cause and prejudice or a fundamental miscarriage of justice to overcome the procedural bar. Winland was represented by counsel on appeal. He does not argue or present any evidence that an outside influence caused him to omit any federal law or constitutional claim in his appeal and he cannot show a fundamental miscarriage of justice because the evidence shows he shot at Colon. While Winland states he was not trying to shoot Colon, he freely admits he waited for Colon to exit the house, pulled into Colon's driveway when he saw him, exited the van, and fired at the door Colon was trying to enter. (Ex. 2 at 224,225, 239). This is confirmed by Colon and Winland's testimony.

Finally, Winland uses the wrong standard in his argument. Winland claims that the evidence does not show he had murderous intent, however, to prove attempted second-degree murder in Florida, the state must prove that Winland acted with depraved mind. Fla. Stat. §§ 777.04(1) & 782.04(2) (2004). Under Florida precedent, pointing a gun at an individual and firing the weapon is imminently dangerous to human life and evinces a depraved mind. *See Hooker v. State*, 497 So. 2d 982 (Fla. 2d DCA 1986) (upholding second-degree murder conviction where the defendant, acting out of racial animus, shot into a mobile home he had reason to know would be occupied, killing a Guatemalan farm worker inside); *Edwards v State*, 302 So. 2d 479, 480-81 (Fla. 3d DCA 1974). Accordingly, there are no exceptions to the procedural bar and Ground One is denied.

*Ground Two*

In Ground Two, Winland claims that trial counsel was ineffective for failing to call a ballistics expert to testify about the trajectory of the pellets fired from his shotgun. Winland argues trial counsel's performance was objectively unreasonable and the omission of expert testimony prejudiced his case. Trial counsel inserted shish-kabob skewers into the holes made by the pellets from the shotgun blast to display the shot's trajectory. Winland says this did not accurately identify the trajectory. Winland argues that an expert could have been credited with the knowledge, training, and expertise that would have refuted the prosecutor's assumptions and cast a reasonable doubt in the jurors' minds when weighing the evidence and returning a verdict.

The Respondent argues that Winland's position is based upon unsupported conclusions. Winland never identified an expert that was available to testify and does not explain how the testimony related to trajectory would have benefitted his defense.

Upon review the Post-Conviction Court denied Winland's claim as follows:

> Defendant's first ground is that counsel was ineffective for failing to secure and call an expert witness at trial. This case arose from an incident in which Defendant showed up at the victim's house and fired a shotgun at him as he was fleeing back inside. Specifically, Defendant alleges that a trajectory and ballistics expert would have testified that the victim
>
> was behind a closed door when he fired and that Defendant shot at the victim with birdshot, not buckshot, which he claims is a "less lethal" type of shotgun ammunition. This testimony would have allegedly supported Defendant's claim that he shot at the victim with only the intent to scare him, not kill him.
>
> * * * * * * * *
>
> This claim is conclusively refuted by the record. It appears that Defendant proposes this expert testimony in hopes that it would have rebutted the victim's testimony that the door was not closed when Defendant shot at him. However, photographs and testimony showed that the birdshot fired by

Defendant damaged the inside edge of the door, which would have been obstructed by the doorframe had the door been closed at the time he fired the shotgun. Attached to this order are pages . . . of the trial transcript . . . detailing the damage to the door and the prosecution's closing argument comments on the damage to the door. Defendant's claim that expert testimony would have refuted the plain implications of the photographs presented at trial is not plausible. Common sense dictates that the door could not have been shut when he fired the gun. Experts are not permitted to testify to statements of fact within the common understanding of jurors. *Florida Power Corp. v. Barron*, 481 So.2d 1309, 1310 (Fla 2d DCA 1986) ("In order to be admissible, expert testimony must concern a subject which is beyond the common understanding of the average layman and ... will probably aid the triers of fact in their search for truth.").

Moreover, while the use of "less lethal" birdshot may have lent some extra credibility to Defendant's claim that he only intended to scare the victim, the lack of this testimony does not create the level of prejudice necessary to support a *Strickland* claim. It was undisputed at trial that Defendant fired a shotgun in the direction of the victim after displaying threatening behavior towards him earlier in the day. Even if an expert testified that birdshot is "less lethal," a "less lethal" type of ammunition is still lethal. Defendant's use of this type of ammunition does not necessarily show that Defendant did not attempt to kill the victim. There is no likelihood that this testimony would have changed the outcome of trial.

Defendant has failed to demonstrate a reasonable probability that the result of his trial would have been different had an expert witness given the testimony he describes in his motion. Because this claim is both conclusively refuted by the record and fails to demonstrate sufficient prejudice, it is denied.

(Ex. 14 at 2-4).

Trial counsel must decide which strategic and tactical option to pursue, such as deciding which witness to call or defense to present. *See Preston v. Sec'y, Dep't of Corr.*, No. 6:08-CV-2085-ORL-31, 2012 WL 1549529, at *40 (M.D. Fla. May 1, 2012), *aff'd sub nom. Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449 (11th Cir. 2015) (*citing Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir.2007)). "Strategic decisions do not

constitute ineffective assistance of counsel if alternative courses have been considered and rejected and [trial] counsel's decision was reasonable under the norms of professional conduct." *Hannon v. Sec'y, Dep't of Corr.*, 622 F. Supp. 2d 1169, 1202 (M.D. Fla. 2007), *aff'd,* 562 F.3d 1146 (11th Cir. 2009); *Strickland*, 466 U.S. at 689 (In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance.").

"Th[e] prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'" *Sullivan v. Deloach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (quoting *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980)). Winland provides no evidence demonstrating that a ballistics expert was available to testify at the time of trial. Winland does not present either an affidavit from an expert or a copy of the expert's deposition testimony to support his ground of ineffective assistance of counsel. Winland's unsupported contention that counsel should have called an expert to testify, without more, is insufficient to warrant relief. *See, e.g., Bray v. Quarterman*, 265 F. Appx. 296, 298 (5th Cir. 2008) ("To prevail on [a claim of ineffective assistance of counsel for failing to call a witness], the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an

ineffective assistance claim.") (footnotes omitted). "[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." *Streeter v. United States*, 335 F. Appx. 859, 864 (11th Cir. 2009).

Trial counsel's strategic decision not to call an expert witness was reasonable. Winland admitted that he fired the gun at Colon as Colon entered the house through the garage door. As the Post-Conviction Court noted, the physical evidence shows the door was at least partially opened when Winland fired the shotgun, because some of the pellets penetrated the open edge of the door. Thus, Winland fails to show how he would be prejudiced by trial counsel's failure to call an expert witness to discuss the trajectory of the shot, since the jury knew he fired the shotgun at Colon, and photographic evidence was presented that the door was at least partially open when he fired. (Ex. 18). The trajectory of the pellets would not have changed the outcome of the trial, so Winland cannot establish the prejudice prong of *Strickland*. Ground Two lacks merit and is due to be denied.

## *Ground Three*

In ground three, Winland claims that his trial counsel was ineffective for failing to pursue a "heat of passion" defense. Winland argues that it is well settled that the heat of passion defense is available in Florida. The heat of passion defense negates the depraved mind element necessary for a conviction of attempted second-degree murder. Winland says he shot at Colon because he was emotionally unstable due to the heat of passion caused by Colon's affair with his common law wife of eighteen years. This claim was raised in Winland's amended state post-conviction motion. Respondent argues that Winland's claim lacks merit because the facts do not support a heat of passion defense.

The Post-Conviction Court found as follows:

> Defendant's second ground is that his counsel was ineffective for failing to pursue a "heat of passion" defense. The circumstances of this case involved a love triangle between Defendant, the victim Luis Colon, and Sherry Hetz. Ms. Hetz was Defendant's girlfriend of 18 years, but she started dating Mr. Colon while still in a relationship with Defendant. Defendant was upset and angry that Ms. Hetz was cheating on him and he was suicidal around and after the time of the crime. "Heat of passion" is a complete defense to murder "if the killing occurs by accident and misfortune ... upon a sudden provocation." *Villella v. State*, 833 So. 2d 192, 195 (Fla. 5th 2002). Alternatively, "it can be used as a partial defense, to negate the element of premeditation in first degree murder or the element of depravity in second degree murder." *Id.* (citing *Douglas v. State*, 652 So. 2d 887 (Fla. 4th DCA 1995). However, "the heat of passion defense involves a sudden or immediate emotional response." *Id.* at 198 (Sharp, W. J., concurring in part and dissenting in part). "In the heat of passion, the slayer is oblivious to his real or apparent situation... [and] impelled by a blind and unreasoning fury to redress his real or imagined injury, and while in that condition of frenzy and distraction fires the fatal shot." *Disney v. State*, 73 So. 598 (Fla. 1916); *see also, e.g., Palmore v. State*, 838 So. 2d 1222 (Fla. 1st DCA 2003) (example of valid heat of passion defense). This claim is conclusively refuted by the record. The facts of this case could not have supported a heat of passion defense. According to Defendant's own version of the events, he knew about the relationship between Ms. Hetz and the victim for over a month, including the sexual details. He began to think of some way to "scare the shit" out of the victim so that he would stop seeing Ms. Hetz on his own. He told law enforcement after the crime that he had been planning the assault for a couple weeks. Before the crime, he carefully took three different guns from his home, put them in his van unloaded, drove to the victim's home, loaded the shotgun, and calmly waited for an opportunity when the victim exited his home. Defendant was in no way "oblivious to his real or apparent situation" or "impelled by a blind and unreasoning fury." Although Defendant may have felt hurt and upset about Ms. Hetz's infidelity, this does not transform his planned attack into a kneejerk "heat of passion" crime. . . . When the facts of a case cannot support a heat of passion instruction, counsel is not ineffective for failing to pursue it. *Burke v. State*, 96 So.3d 982 (Fla. 4th DCA 2012); *see also*

*Ferrell v. State*, 29 So.3d 959,976 (Fla. 2010) (counsel cannot be found ineffective for failing to raise an argument that was meritless). Defendant's second ground is . . . denied.

(Ex. 14 at 5-6).

Trial counsel made a strategic decision not to pursue a heat of passion defense. Winland's trial counsel was not ineffective for failing to argue the defense at trial. Winland stated that he knew about the affair between Hetz and Colon for about a month prior to the incident. (Ex. 2 at 218-19). Two weeks before the shooting Winland drove by Colon's house. *Id.* at 221. Winland took all of the guns out of his house a .22 caliber, a .38 special, and a shotgun and put them in his van. *Id.* at 223. Winland then drove to Colon's house and parked on the side of the road waiting for Colon to emerge from the house. *Id.* at 224. Winland put a shell in the shotgun. *Id.* When Colon opened the garage door, Winland drove his van halfway up Colon's drive way. *Id.* He exited the van, aimed the shotgun at the door where Colon was running back inside the house, and fired. *Id.* at 225.

The defense of "heat of passion" is well established in Florida. It can be a complete defense if the killing occurs by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation. *See* § 782.03, Fla. Stat. (2002); *see also* Fla. Std. Jury Instr. (Crim.) On Excusable Homicide. Or...it can be used as a partial defense, to negate the element of premeditation in first degree murder or the element of depravity in second degree murder. *See, e.g., Douglas v. State*, 652 So.2d 887 (Fla. 4th DCA 1995); *Villella v. State*, 833 So. 2d 192, 195 (Fla. 5th DCA 2002). "Heat of passion" was best defined in *Disney v. State*, 72 Fla. 492, 73 So. 598, 601 (1916):

> A killing in the 'heat of passion' occurs when the state of mind of the slayer is necessarily different from that when the killing is done in self-defense. In the heat of passion, the slayer is oblivious to his real or apparent situation. Whether he believes

> or does not believe that he is in danger is immaterial; it has no
> bearing upon the question. He is intoxicated by his passion,
> is impelled by a blind and unreasoning fury to redress his real
> or imagined injury, and while in that condition of frenzy and
> distraction fires the fatal shot.

*Salter v. Sec'y, Dep't of Corr.*, No. 8:15-CV-2001-T-36CPT, 2018 WL 3621040, at *7–8

(M.D. Fla. July 30, 2018) (*citing Daley v. State*, 957 So. 2d 17, 18 (Fla. 4th DCA 2007).

The facts do not support a heat of passion defense. Winland knew about the affair for at least a month. He removed his guns from his house and placed them in his van. He drove to Colon's house and parked on the side of the road waiting for Colon to exit. He loaded the shotgun, and once he saw Colon exit the house, he drove the van into the driveway, jumped out of the van, pointed the weapon at Colon, and fired striking the door as Colon was reentering the house.

The facts support a different conclusion from heat of passion — one that showed planning and deliberate action by Winland — rather than being "oblivious to his real or apparent situation" or "impelled by a blind and unreasoning fury." Based upon the facts in the record, Trial counsel's failure to argue a heat of passion defense was not unreasonable. Trial counsel cannot be ineffective for failing to bring a defense contrary to the facts. *See Palmer v. McDonough*, 2006 WL 1382094 (M.D. Fla. May 19, 2006) (noting that failure to bring a meritless claim is not ineffective assistance of counsel). Ground Three is denied.

## Ground Four

Winland claims that his trial counsel was ineffective for misinforming him about his right to testify. Winland argues that trial counsel gave him bad advice by advising him that he should not testify because the Prosecutor could twist his words. Winland acknowledges that the trial court went through the colloquy of his Constitutional rights.

However, Winland says he told the trial court he did not want to testify at the colloquy based upon trial counsel's bad advice. Winland argues that had he testified, his testimony would have reflected the line of defense for the jury to weigh the evidence finding him guilty of shooting into a dwelling and allowing the jury to use its pardon power on the remaining counts because he reacted in the way he did in the heat of passion.

Respondent states this claim was raised in Winland's amended state postconviction motion and is exhausted for federal habeas purposes. However, the claim is conclusory and insufficient to entitle Winland to relief. Winland does not specify exactly what his testimony would have been and alleges no facts which would demonstrate prejudice under *Strickland*. His conclusory assertion that his testimony would have "reflected a line of defense" and allowed the jury to exercise its pardon power is merely speculation, which is insufficient to demonstrate prejudice and the claim should be dismissed.

The Post-Conviction Court denied this claim as follows:

> Defendant's third ground is that trial counsel was ineffective for misadvising him on whether to testify at trial. Specifically, Defendant alleges that counsel told him his testimony was not needed because the State had not proven their case, and that if he did testify, "the prosecutor would twist his words." Defendant asserts that if he had testified, he would have explained to the jury that his actions were committed in the heat of passion.
>
> The analysis employed for a claim that defense counsel misadvised whether to testify at trial involves two inquiries: (1) whether the defendant voluntarily agree[d] with counsel not to take the stand; and (2) whether counsel's advice to the defendant, even if voluntarily followed, was nevertheless deficient because no reasonable attorney would have discouraged the defendant from testifying. *Simon v. State*, 47 So. 3d 883, 885 (Fla. 3d DCA 2010) (citing *Lott v. State*, 931 So. 2d 807, 819 (Fla. 2006)). Moreover, a defendant must still

show prejudice under *Strickland* when alleging that defense counsel erroneously interfered with his right to testify. *Oisorio v. State*, 676 So. 2d 1363 (Fla. 1996). As for the first inquiry, the Court conducted a colloquy with Defendant during trial regarding his decision to testify. Defendant confirmed on the record that he wished to remain silent. Thus, the Court concludes that Defendant voluntarily agreed not to take the stand. . ..

As for the second inquiry, the Court finds that Defendant has not demonstrated that no reasonable attorney would have discouraged him from testifying. Defendant asserts that the State would not have been able to "twist" his words on cross-examination "as a matter of law." It is unclear what Defendant means by "twist his words." However, it is not false that the State would have been able to confront Defendant on any of his testimony, like any other witness on cross-examination. Moreover, Defendant previously gave a statement to law enforcement which was presented to the jury; any attempt to give a different account of what happened or "explain away" his statement could have been impeached by the State.

Defendant also has not demonstrated how the outcome of his trial would have been different if he were allowed to testify. His assertion that he would have told the jury that he acted in the heat of passion is not sufficient to establish prejudice. There is no likelihood that his proposed testimony could have affected the outcome of his trial because, as explained above, a heat of passion defense would not have been successful. Thus, Defendant has not shown prejudice.

Defendant has failed to demonstrate that his counsel's advice was ineffective or that he was prejudiced by not testifying at his trial. Accordingly, this claim is . . . denied.

(Ex. 14 at 6-7).

A defendant's right to testify at a criminal trial is a fundamental and personal right which cannot be waived by defense counsel. *Payne v. United States*, 546 F. Supp. 2d 1312, 1316 (M.D. Fla. 2008), *aff'd,* 566 F.3d 1276 (11th Cir. 2009) (*citing United States v. Teague,* 953 F.2d 1525, 1532 (11th Cir.1992) (en banc), *cert. denied,* 506 U.S. 842, (1992)). In *Teague,* the Eleventh Circuit held that it is defense counsel's responsibility to

advise the defendant of this right and the strategic implications and "that the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance [under *Strickland*]." *Id.* at 1534. The *Teague* Court reasoned that an attorney's performance would be deficient under the first prong of the *Strickland* test if counsel refused to accept the defendant's decision to testify and would not call him to the stand or, alternatively, if defense counsel never informed the defendant of the right to testify. *Id.* In *Teague,* the defendant's ineffective assistance of counsel claim was rejected because the trial court found that counsel had advised the defendant of his right to testify, had advised him that he should not exercise that right, and the defendant did not protest. *Teague,* 953 F.2d at 1535.

Likewise, Winland was advised of his right to testify, counseled not to take the stand, participated in the Court's colloquy, and refused to testify. Thus, Winland's decision not to testify was not based solely on counsel's advice but also on the Court's colloquy. To the extent that Winland blames his refusal to testify on trial counsel, his argument fails. Trial counsel informed him of the right to testify and advised him against taking the stand which was a sound tactical decision. Moreover, the final decision to take the stand belonged solely to Winland, and Winland told the Court at the colloquy that he would not testify. Therefore, there was no ineffective assistance of trial counsel.

## Ground Five

Winland claims that his trial counsel was ineffective for failing to move for a judgment of acquittal on the second-degree murder charge based on a failure to prove murderous intent. Winland argues that although trial counsel moved for J.O.A. on count one, attempted second-degree murder, trial counsel's performance was deficient.

Winland argues he was prejudiced because trial counsel simply made boilerplate arguments that the State did not prove a prima facie case of second-degree murder. Winland argues that had trial counsel taken additional steps that the trial judge would have granted J.O.V. and either reduced or dismissed the charge. Respondent argues that Ground Five lacks merit.

The Post-Conviction Court denied Winland's claim as follows:

> The attempted second-degree murder instruction, which was read to the jury, reads as follows:
>> To prove the crime of attempted second-degree murder, the State must prove the following two elements beyond a reasonable doubt. Number one, [Defendant] intentionally committed an act which would have resulted in the death of Luis Colon except that someone prevented [Defendant] from killing Luis Colon or he failed to do so. Two, the act was imminently dangerous to another and demonstrat[ed] a depraved mind without regard for human life... In order to convict of attempted second-degree murder, it is not necessary for the State to prove the Defendant had an intent to cause death.
>
> Attached to this order is a copy of pages 307-317 of the trial transcript . . . during which the above instruction was read to the jury.
>
> According to the plain language of the instruction, the State did not need to demonstrate "murderous intent" in order to prove the charge of attempted second-degree murder. Thus, counsel's failure to move for judgment of acquittal on that basis was not ineffective. . ..

(Ex. 14 at 8-9).

Winland's argument lacks merit as murderous intent is not an element of attempted second-degree murder. In Florida, attempted second degree murder consists of the following elements: "(1) the defendant intentionally committed an act that could have resulted, but did not result, in the death of someone, and (2) the act was imminently

dangerous to another and demonstrated a depraved mind without regard for human life."
*Kendrick v. Sec'y, Dep't of Corr.*, No. 6:10-CV-333-ORL-31, 2011 WL 4529638, at *4 (M.D. Fla. Sept. 30, 2011) (*quoting State v. Florida*, 894 So.2d 941, 946 (Fla.2005), *receded from on other grounds* (citing *Brown v. State*, 790 So.2d 389, 390 (Fla.2000)); *see also* Fla. Stat. §§ 777.04(1) & 782.04(2) (2004)).  Arguing that the Prosecutor did not prove murderous intent would be meritless, and failure to bring a meritless claim is not ineffective assistance of counsel. *Palmer v. McDonough*, 2006 WL 1382094 (M.D. Fla. May 19, 2006).  Further, Winland's argument that had trial counsel made better arguments the Court would have granted his J.O.V. is nothing more than speculation, and self-serving speculation will not sustain an ineffective assistance claim. *Ashimi*, 932 F.2d at 650; *Streeter*, 335 F. Appx. at 864.

<u>Ground Six</u>

Winland claims that his trial counsel was ineffective for failing to object or move for mistrial when the prosecutor incorrectly stated, during closing argument, that Sherry Hetz called the victim and said, "watch out, he's got guns."  During closing arguments, the Prosecutor stated that "you heard how Sherry had called the alleged victim — Ms. Hetz — that is and said watch out, he's got a gun."  Colon nor any other witness ever made this statement.  Winland argues the statement was made in violation of *Gigilio* where (1) the statement was false, (2) the prosecutor knew the statement was false; and (3) the statement was material.  The Post-Conviction Court dismissed the claim as successive and untimely filed.  Winland argues that the motion as not untimely because the Court misunderstood the time calculations.  Respondent argues that the claim is without merit.

The Post-Conviction Court held as follows:

The primary purpose of closing argument is to give the parties an opportunity to summarize the evidence and explain how the facts should be applied to the law as instructed by the trial court. *See Ruiz v. State*, 743 So.2d 1 (Fla.1999). The courts generally allow wide latitude in closing arguments by permitting counsel to advance all legitimate arguments and draw logical inferences from the evidence. *See Lukehart v. State*, 776 So.2d 906 (Fla. 2000), *cert. denied*, 533 U.S. 934 (2001). "The granting of a mistrial should be only for a specified fundamental or prejudicial error which has been committed in the trial of such a nature as will vitiate the result... However, when an alleged error is committed which does no substantial harm and the defendant is not materially prejudiced by the occurrence," a motion for mistrial will be denied. *Perry v. State*, 200 So. 2d 525, 527 (Fla. 1941) (citations omitted). In determining whether improper closing argument remarks warrant a new trial, the remarks must be examined in "the context of the closing argument as a whole and considered cumulatively within the context of the entire record." *McArthur v. State*, 801 So.2d 1037, 1040 (Fla. 5th DCA 2001). Thus, while an improper comment may in one case constitute reversible error, it may not be reversible error in another case when considered in the context of the entire record. *Id.*

It is true that no *witness* testified on Ms. Hetz giving the victim a warning prior to the assault. Ms. Hetz was not called as a witness at trial, the victim did not mention whether or not he received such a warning, and Defendant did not testify. However, these facts arguably entered evidence through Defendant's interrogation with law enforcement, which was published to the jury as evidence. The officers questioned Defendant about whether Ms. Hetz gave the victim the alleged warning. Through Defendant's responses, it is clear that he intentionally told Ms. Hetz that he removed the guns from their home with the expectation that she would warn the victim, hopefully scaring him. Defendant said that this "backfired" because they chose to go out to dinner that night anyway, "so what good did it do?"
See [Ex. 2, p. 234].

Additionally, even if the Court assumed arguendo that the comment was improper, a mistrial may not be warranted if the "comment was not so egregious as to fundamentally undermine the reliability of the jury's recommendation." *Davis v. State*, 604 so. 2d 794, 798 (Fla. 1992). In determining

whether improper closing argument remarks warrant a new trial, the remarks must be examined in "the context of the closing argument as a whole and considered cumulatively within the context of the entire record." *McArthur v. State*, 801 So.2d 1037, 1040 (Fla. 5th DCA 2001). The elements of the crime Defendant was charged and convicted of were otherwise thoroughly proven, regardless of whether Ms. Hetz warned the victim. Moreover, there was a significant amount of other testimony and evidence indicating Defendant's ill will towards the victim. . .. The State's comments on Ms. Hetz's warning, even if improper, are not so egregious that they undermine the reliability of the verdict, especially when considered in "the context of the closing argument as a whole and considered cumulatively within the context of the entire record." *Id.* Defendant has failed to allege facts showing that counsel's performance was deficient or that the outcome of his trial would have been different, or that a motion for mistrial would have been actually granted. Accordingly, this claim is . . . denied.

(Ex. 14 at 8-9).

The Post-Conviction Court acknowledged that no one testified that Colon received a warning call from Hetz. However, the phone call evidence from Hetz was admitted `through Winland's interrogation with law enforcement, which was published to the jury. Winland's interrogation went as follows:

Q.    "This morning she called him and said, hey be careful, my ex-boyfriend is really upset, we're having a big argument and he has a gun?"

A.    "Well I don't think she said that, she just was"

Q.    "Giving him a heads up?"

Q.    "Be careful, and then this happens today, you think it's just coincidence that that she calls him—"

A.    "Well, no. I made it a point to let her know I took the guns out of the house."

Q.    "Okay,"

A.   "And what would you think if your partner just took the guns out of the house that should scare the living shit out of him."

Q.   "So, you were hoping she'd see that?"

A.   (inaudible)

Q.   "And then she would call him and let him know and she would scare the shit out of him?"

A.   "But it backfired because as I know tonight we're going to dinner, so what good did it do?"

(Ex. 2 at 234).

The question of when to object is a strategic decision that is within the discretion of the attorney and should not normally be questioned by a court if the attorney's actions could be considered reasonably competent counsel. *Dailey v. Sec'y, Fla. Dep't of Corr.,* *No. 8:07-CV-1897-T-27MAP, 2012 WL 1069224, at \*3 (M.D. Fla. Mar. 29, 2012)* (citing *Peterka v. State,* *890 So.2d 219, 233 (Fla.1999)*).  While the Prosecutor's statement was not explicitly testified to in Court, there was evidence presented to the jury that Hetz called Colon and warned him that Winland had a gun.  Therefore, trial counsel's failure to object to the Prosecutor's statement did not prejudice Winland under *Strickland.*

<u>Grounds Seven Through Thirteen</u>

Respondent argues that Grounds Seven through Thirteen are procedurally barred because the State Post-Conviction Court denied Winland's second post-conviction motion as both successive and untimely.  (Ex. 21).  Winland says the State Court wrongly calculated the time period, so that his claims should not be untimely.  Thus, he argues

the Court should consider Grounds Seven through Thirteen even though they are procedurally barred.

The Post-Conviction Court held as follows:

> The present postconviction motion is both untimely and successive under Rule 3,850. [Winland] raises clams that were not raised in his previous motion, but has not provided an explanation as to why they were not raised in his previous motion, as required by Rule 3,850(c)(5). [Winland] also appears to raise or refer to claims and issues already considered and denied on the merits in his previous postconviction motion.
>
> Defendant does not include any explanation for this successive pleading, nor does he plead any of the exceptions to the two-year time bar as required by Rule 3.850(b). Instead, he merely states that he "had 90 days to seek certiorari until May 15, 2015. Therefore, this postconviction proceeding is properly filed and tolls all state and federal time limitations." This is an insufficiently pleaded attempt to address the rule's time bar. Defendant may be referring to the tolling effect cause by seeking certiorari review with the Florida Supreme Court after direct appeal to a district court of appeal has been denied. *See e.g. Barkett v. State*, 728 So. 2d 792 (Fla. 1st DCA 1999). However, the Second District Court of Appeal affirmed his underlying convictions and sentences in September 2013. There is no indication in the record, nor any documents attached to his motion, showing how his case was tolled until May 2015, or even confirming that he sought certiorari review in the first place. Regardless, this argument does not excuse the successive nature of the motion.

(Ex. 22 at 1-2). While Winland argues that the Post-Conviction Court did not properly consider the time frames under the Rule, Winland provides no explanation why the post-conviction court was wrong other than a conclusory statement that they were wrong. Winland's argument lacks merit. Further, Grounds Seven through Thirteen are also procedurally barred because his Rule 3.850 motion was successive.

Winland cannot return to state court to present Grounds Seven through Thirteen because Florida procedural rules preclude a second, untimely Rule 3.850 motion absent

certain extenuating circumstances that are not present. *See* Fla. R. Crim. P. 3.850 (requiring such a motion to be filed within two years after the judgment and sentence become final).  If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established. S*ee Coleman,* at 750-51.  The Court finds these claims are unexhausted and procedurally defaulted.

A procedural default for failing to exhaust state court remedies will only be excused in one of two narrow circumstances. First, Petitioner may obtain review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting therefrom. *Allen v. Sec'y,* No. 2:12-CV-644-FTM-29CM, 2016 WL 762648, at *5 (M.D. Fla. Feb. 24, 2016).  Second, Petitioner would have to show a fundamental miscarriage of justice.  Winland shows neither cause nor prejudice — failing to timely file Grounds Seven through Fourteen in his initial Rule 3.850 motion was his own fault — nor did he show a fundamental miscarriage of justice because he cannot show actual innocence of the crime of conviction as required by *Smith v. Murray,* 477 U.S. 527, 537 (1986).  Winland did not file a reply and the Court otherwise finds no basis to excuse the procedural default. *See generally Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001).  Consequently, the Court finds Grounds Seven through Thirteen are unexhausted and procedurally barred.

### *Grounds Fourteen and Fifteen*

In Grounds Fourteen and Fifteen, Winland raises claims of ineffective assistance of appellate counsel.  Winland raised these claims in his state claims alleging ineffective assistance of appellate counsel. (Ex. 18).  However, the Second DCA dismissed

Winland's state petition as untimely. (Ex. 19). If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established. S*ee Coleman,* at 750-51.

Here, Winland cannot return to state court to present Grounds Fourteen and Fifteen because the claims were untimely nor can he argue cause and prejudice or show a fundamental miscarriage of justice under *Martinez*, because *Martinez* does not apply to ineffective assistance of appellate counsel. *Davila v. Davis*, 137 S. Ct. 2058 (2017) (noting that the United States Supreme Court held that *Martinez* applies exclusively to ineffective assistance of trial counsel claims). Therefore, Grounds Fourteen and Fifteen are procedurally barred.

### *Ground Sixteen*

In Ground Sixteen, Winland argues the accumulation of errors violated his rights to due process and a full and fair trial. Winland makes no argument to support this claim. Respondent argues that this claim was not raised in state court and is procedurally barred.

Winland's claim of cumulative error is without merit. A review of the record shows that this claim was not raised in the state court and is procedurally barred. As all Winland's individual claims are either procedurally barred or without merit, his cumulative error claim fails. *Hannon v. Sec'y, Dep't of Corr.*, 622 F. Supp. 2d 1169, 1229–30 (M.D. Fla. 2007), *aff'd,* 562 F.3d 1146 (11th Cir. 2009) (*citing Griffin v. State,* 866 So.2d 1, 22 (Fla.2003) ("[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail."). Therefore, this claim is without merit and rejected as procedurally barred.

## CERTIFICATE OF APPEALIBILITY

Winland is not entitled to a certificate of appealability. A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 184 (2009). "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further", *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003)(citations omitted). Petitioner has not made the requisite showing in these circumstances.

Accordingly, it is now

**ORDERED:**

1. Petitioner Douglas K. Winland's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

2. The Clerk of Court is directed to enter judgment accordingly, terminate all pending motions, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 22nd day of March 2019.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies:
All Parties of Record
SA: FTMP-2